**LYNCH CARPENTER, LLP**
Todd D. Carpenter (Cal. Bar No. 234464)
todd@lcllp.com
Scott G. Braden (Cal. Bar No. 305051)
scott@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, California 92122
Telephone: (619) 762-1910
Facsimile: (858) 313-1850

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

I.P., individually,

Plaintiffs,

v.

HUNDREDS PREMIUM LLC, doing business as EXOTIC BLUE MAGIC, and DOES 1-50, inclusive,

Defendant.

Case No. 3:25-cv-01923-DMS-SBC

**FIRST AMENDED COMPLAINT**

DEMAND FOR JURY TRIAL

## PARTIES

1. Plaintiff I.P.[1] ("Plaintiff") is a resident and citizen of Newfane, New York.

2. Defendant Hundreds Premium LLC, doing business as Exotic Blue Magic ("Defendant" or "Blue Magic"), is a California limited liability company with its principal place of business in Temecula, California.

3. Defendant owns, operates, markets, distributes, and sells kratom powder, capsule, and extract products under the Exotic Blue Magic brand, including through its

[1] Because this action concerns issues of addiction and medical status, Plaintiff is filing under his initials for the sake of his personal privacy. Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result. Since addiction issues are still wrongly stigmatized, Plaintiff is filing this matter anonymously but will reveal his name as necessary to the Court under seal.

website, https://bluemagickratom.com, and through retail outlets in New York and throughout the United States.

## NATURE OF THE ACTION

4. This is a civil action by Plaintiff I.P. against Defendant Hundreds Premium LLC, doing business as Exotic Blue Magic, arising from Defendant's marketing and sale of kratom products as ordinary retail supplements without disclosing material risks of addiction, physical dependence, and opioid-like withdrawal.

5. Defendant manufactures, markets, distributes, and sells kratom powder, capsule, and extract products to consumers nationwide, including Plaintiff, through retail channels such as smoke shops and online sales. Defendant presents these Products as benign, over-the-counter kratom or "supplement" products, and nowhere on the Products' packaging or labeling discloses that regular use can cause addiction or severe withdrawal.

6. Kratom products contain mitragynine, an alkaloid that acts on opioid pathways in the brain. As a result, regular kratom use carries a substantial risk of physical dependence and withdrawal symptoms that resemble those associated with traditional opioids. These risks are not commonly known to ordinary consumers and are not disclosed by Defendant.

7. Defendant omitted these material facts from its Products' packaging, labeling, and marketing. The risk that a retail product can cause addiction and painful withdrawal is information a reasonable consumer would consider important in deciding whether to purchase or use the product.

8. Plaintiff purchased and used Defendant's Products as intended, without knowledge of their addictive nature. As a result of Defendant's omissions, Plaintiff became dependent on the Products, was unable to discontinue use without experiencing withdrawal symptoms, and incurred substantial economic harm.

9. Plaintiff suffered actual damages, including the amounts paid for Products he would not have purchased had the true risks been disclosed, as well as additional out-of-

pocket losses associated with continued use and attempts to discontinue use. Plaintiff also seeks statutory damages, treble damages where authorized by law, and attorneys' fees.

10. Defendant's conduct was consumer-oriented, deceptive, and unlawful, and violated New York consumer protection statutes, common-law duties, and implied warranties applicable to retail consumer goods.

11. Plaintiff brings this action individually to recover damages, restitution, statutory relief, and attorneys' fees, and to hold Defendant accountable for selling addictive products to consumers without adequate warnings.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Plaintiff I.P. is, and at all relevant times was, a citizen and resident of the State of New York.

14. Defendant Hundreds Premium LLC is a limited liability company organized under the laws of California, with its principal place of business in Temecula, California. Upon information and belief, none of its members is a citizen of New York.

15. Defendant Hundreds Premium LLC is a California limited liability company with its principal place of business in Temecula, California, and is therefore a citizen of California for purposes of diversity jurisdiction.

16. The amount in controversy exceeds $75,000, exclusive of interest and costs. As alleged herein, Plaintiff purchased Defendant's kratom products regularly over an extended period of time, including Defendant's kratom powder and concentrated extract shots, spending at least $1,500 per month over the course of approximately 18 months. Plaintiff seeks recovery of actual damages, restitution, consequential out-of-pocket losses, statutory damages under New York law, treble damages where permitted, attorneys' fees, and costs. The aggregate value of these damages and statutory remedies exceeds the jurisdictional threshold.

17. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District, maintains its principal place of business in this District, and has purposefully directed its business activities toward consumers nationwide, including Plaintiff in New York.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this District, including Defendant's marketing, labeling decisions, and distribution of the Products.

## GENERAL ALLEGATIONS

### A. Defendant's Products and Labeling Omissions

19. Defendant Hundreds Premium LLC manufactures, markets, distributes, and sells kratom products under the brand name "Exotic Blue Magic," including kratom powder, capsules, and extract-infused products (the "Products").

20. The Products are sold directly to consumers through Defendant's website and through third-party retail channels, including smoke shops, convenience stores, and other brick-and-mortar retailers, and are marketed as retail kratom or kratom "supplement" products suitable for regular consumer use.

21. Representative packaging for Defendant's Products depicts stylized imagery and promotional language emphasizing "premium quality," "natural" kratom strains, and product purity. Nothing on the Products' front-facing packaging indicates that the Products are addictive, habit-forming, or capable of causing physical dependence or withdrawal.

22. Nowhere on the Products' packaging does Defendant disclose that kratom's primary active alkaloids act on opioid receptors in the brain, or that regular use can lead to opioid-like dependence and withdrawal symptoms.

23. The Products' packaging does not warn consumers that daily or repeated use may result in tolerance, physical dependence, or withdrawal upon cessation, nor does it disclose that users may experience symptoms consistent with opioid withdrawal if they attempt to stop using the Products.

24. Defendant's packaging and marketing instead present the Products as ordinary kratom or botanical products, without any meaningful warning regarding addiction risk, withdrawal symptoms, or the need to limit frequency or duration of use.

25. A reasonable consumer viewing Defendant's Products—whether in retail stores or online—would not expect that the Products function similarly to opioids or carry a risk of addiction and withdrawal comparable to opioid substances.

26. Defendant controls the content of its Products' labeling and packaging and chose not to disclose these material risks, despite their significance to consumers deciding whether to purchase or continue using the Products.

27. These omissions are material because a reasonable consumer would consider the risk of addiction and withdrawal important in deciding whether to purchase or use Defendant's Products.

**B. Plaintiff I.P.'s Experience With Defendant's Products**

28. Plaintiff I.P. ("I.P.") is a resident of Newfane, New York.

29. I.P. first purchased Defendant's Exotic Blue Magic kratom products in or about March 2023, initially in powder form, believing they were a lawful, non-addictive kratom or botanical product that could help manage his pain. I.P. selected Defendant's Products because, among other things, the branding and packaging presented them as a premium, high-quality product, and nothing on the packaging warned of any risk of addiction or dependence.

30. At the time of his initial purchase, Defendant's Products contained no warning—on the packaging or otherwise—that regular use could lead to addiction, physical dependence, or withdrawal symptoms, or that the Products acted on opioid receptors in the brain. Further, at no point thereafter did I.P. see any warning that the Products were addictive or caused opioid-like withdrawal.

31. After his initial use, I.P. continued purchasing Defendant's Products on a regular basis. Over time, his consumption increased, and he purchased both kratom powder and Defendant's concentrated extract shots, consuming the Products multiple times per day.

At peak usage, I.P. was purchasing Defendant's kratom powder on a regular basis and approximately four of Defendant's extract shots every other day.

32. During the relevant period, I.P. typically paid approximately $25 per extract shot and purchased Defendant’s powder products at comparable retail prices, resulting in average monthly expenditures on Defendant's Products of at least $1,500 per month, and total out-of-pocket spending on Defendant's Products in excess of $27,000 over the course of his use.

33. As I.P.’s use continued, he developed a physical dependence on Defendant's Products. When he attempted to reduce or discontinue use, he experienced withdrawal symptoms consistent with addiction, including extreme drowsiness, excessive yawning, sneezing, profuse sweating, jitters, restlessness, and other withdrawal-type symptoms, which compelled him to resume use to avoid those symptoms.

34. I.P. attempted to stop or reduce his use of Defendant’s Products on multiple occasions—at least ten times—since he began using them, but was unable to do so due to the severity of withdrawal symptoms and his resulting inability to function without continued consumption of the Products.

35. As a direct and proximate result of Defendant’s omissions regarding the addictive nature of its Products, I.P. incurred substantial economic losses, including the money he spent purchasing Defendant’s Products that he would not have purchased had the addiction and withdrawal risks been disclosed.

36. In addition to the cost of the Products themselves, I.P. incurred additional out-of-pocket expenses incurred in attempting to manage and discontinue his dependence on Defendant’s Products, including approximately $70 for a cessation supplement (QuitK) purchased to assist in tapering his use.

37. Had Defendant disclosed on its Products’ packaging that regular use could result in addiction, physical dependence, and withdrawal symptoms, or that the Products acted on opioid receptors in the brain, I.P. would not have purchased Defendant’s Products, or would not have continued purchasing them at the frequency and quantities he did.

**C. Material Omissions, Reliance, and Causation**

38. At all relevant times, Defendant failed to disclose that its kratom Products were addictive, habit-forming, capable of causing physical dependence, and associated with withdrawal symptoms upon cessation.

39. Defendant's omission of these material facts was likely to mislead a reasonable consumer acting reasonably under the circumstances.

40. Plaintiff I.P. was unaware at the time of purchase that Defendant's Products carried a risk of addiction, physical dependence, or withdrawal symptoms, or that the Products acted on opioid receptors in the brain.

41. I.P. reasonably relied on Defendant's packaging, labeling, and marketing, which presented the Products as ordinary kratom or botanical products without any warning regarding addiction or withdrawal risks.

42. Had Defendant disclosed on its Products' packaging or at the point of sale that regular use could result in addiction, physical dependence, or withdrawal symptoms, I.P. would not have purchased Defendant's Products, or would not have continued purchasing them in the quantities and frequency he did.

43. Defendant's omissions were a substantial factor in causing I.P.'s purchases of the Products and the resulting economic losses he incurred.

**D. Damages, Economic Injury, and Amount in Controversy**

44. Plaintiff I.P. has suffered concrete and ascertainable economic injury as a direct and proximate result of Defendant's deceptive acts and omissions, including amounts paid for products he would not have purchased had Defendant disclosed the products' addictive and opioid-like nature.

45. Plaintiff I.P. began purchasing Defendant's kratom products in or about March 2023 and continued purchasing them on a regular basis for a period of approximately 18 months, at which point Defendant's Products were no longer readily available at the retail locations where Plaintiff had purchased them.

46. During this period, Plaintiff purchased Defendant's kratom products regularly, including powder and concentrated extract shot products, consuming the Products multiple times per day. While the amount of powder Plaintiff purchased and consumed is more difficult to quantify because Plaintiff sometimes purchased a different brand if Defendant's was not available, Plaintiff purchased and consumed Defendant's extract shots at an average of approximately 14 shots per week, or roughly 60 shots per month.

47. Plaintiff paid approximately $25 per shot, resulting in average monthly expenditures of approximately $1,500 on Defendant's extract shots alone.

48. Over the course of approximately 18 months of purchases, Plaintiff paid Defendant approximately $27,000 for kratom products.

49. These amounts represent out-of-pocket economic losses for products that were worth less than represented—and, in fact, were worthless—because Defendants materially omitted the risks of addiction, physical dependence, and withdrawal, and because the products were unlawfully marketed as dietary supplements for human consumption and were therefore misbranded and illegal as sold. Plaintiff would not have purchased Defendants' products at all had Defendants disclosed the material risks of addiction, dependence, and withdrawal associated with regular use.

50. In addition to direct purchase costs, Plaintiff incurred additional economic losses related to his dependence on Defendant's products, including but not limited to, approximately $70 for a cessation supplement (QuitK) purchased to assist in tapering and managing withdrawal from Defendant's Products.

51. Plaintiff seeks recovery of actual damages, statutory damages, treble damages where permitted by law, restitution, and attorneys' fees and costs pursuant to, *inter alia*:

i. New York General Business Law §§ 349 and 350; and

ii. California Civil Code § 1780(e).

52. When statutory damages, treble damages, restitutionary relief, and attorneys' fees are considered—as expressly authorized by the applicable statutes—the amount in controversy exceeds $75,000, exclusive of interest and costs.

53. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

## FIRST CAUSE OF ACTION
**Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code§§ 1750, *et seq.***

54. Plaintiff I.P. realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

55. To the extent California law applies to Defendant's conduct, Defendant Hundreds Premium LLC ("Defendant") engaged in unfair, deceptive, and unlawful acts and practices in violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.

56. Defendant is a California limited liability company with its principal place of business in California. The acts and practices challenged herein—including the formulation, labeling, packaging, warnings, omissions, marketing strategy, and consumer disclosures for Defendant's kratom products—were devised, authorized, approved, and implemented from California.

57. Defendant's kratom products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and Defendant is a "person" engaged in transactions intended to result in the sale of goods to consumers within the meaning of Cal. Civ. Code §§ 1761(b) and (c).

58. Defendant marketed, labeled, distributed, and sold its kratom products as retail consumer products, including through online sales channels and retail distribution, without disclosing material facts regarding the products' addictive properties, opioid-like effects, and risk of dependence and withdrawal.

59. Defendant's kratom products contain mitragynine and related alkaloids that act on opioid receptors in the brain, creating a significant risk of physical dependence and withdrawal upon repeated use—facts that Defendant knew or should have known and that are material to reasonable consumers.

60. Despite this knowledge, Defendant failed to disclose these material risks on its product packaging, labeling, and point-of-sale materials, and instead presented the

products as natural, benign, or supplement-like, omitting any warning that regular use could result in addiction or opioid-like withdrawal.

61. Defendant's omissions and representations constitute violations of Cal. Civ. Code § 1770(a), including but not limited to: (i) § 1770(a)(5): Representing that goods have characteristics, uses, or benefits that they do not have; (ii) § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade when they are not; and (iii) § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

62. Defendant's omissions were intentional and material, and Defendant knew that disclosing the addictive and opioid-like nature of its products would have deterred reasonable consumers from purchasing them or would have materially altered their purchasing decisions.

63. Plaintiff I.P. purchased and used Defendant's products in reliance on Defendant's omissions and misleading representations, suffering economic harm as a result of Defendant's unlawful conduct, including conduct violating the CLRA that emanated from California.

64. Had Defendant disclosed the true risks of addiction, dependence, and withdrawal associated with its kratom products, Plaintiff would not have purchased or used them, or would have paid substantially less for them.

65. As a direct and proximate result of Defendant's CLRA violations, Plaintiff suffered economic injury, including but not limited to: (i) money paid for Defendant's products that were worth less than represented; (ii) money paid for products Plaintiff would not have purchased absent Defendant's omissions; and (iii) additional out-of-pocket losses resulting from dependence on the products.

66. Defendant's conduct was willful, knowing, and undertaken in conscious disregard of consumer safety, entitling Plaintiff to all available relief under the CLRA.

67. **Pre-Suit Notice Compliance.** On or about July 23, 2025, Plaintiff's counsel sent Defendant a written notice pursuant to Cal. Civ. Code § 1782(a) via certified mail, return receipt requested. The notice advised Defendant of the specific CLRA violations

alleged herein; demanded that Defendant cease and desist from the unlawful practices described; and demanded full restitution of monies received from consumers as a result of those practices. Defendant failed to respond to the notice and failed to correct or rectify the alleged violations within 30 days, and continues to engage in the unlawful conduct described herein. Accordingly, Plaintiff seeks all relief authorized under the CLRA for Defendant's California-based violations, including restitution, injunctive relief, and recovery of attorneys' fees and costs pursuant to Cal. Civ. Code § 1780(e).

68. Pursuant to Cal. Civ. Code § 1780(a), Plaintiff seeks restitution and injunctive relief prohibiting Defendant from continuing its deceptive practices, as appropriate, together with all other relief authorized by the CLRA.

69. Pursuant to Cal. Civ. Code § 1780(e), Plaintiff seeks an award of attorneys' fees and costs, which the Court shall award to a prevailing plaintiff under the CLRA.

## SECOND CAUSE OF ACTION
## Violation of New York General Business Law § 349

70. Plaintiff I.P. realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71. Defendant engaged in deceptive acts and practices in the conduct of business, trade, or commerce, in violation of New York General Business Law § 349.

72. Plaintiff I.P. is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h). Defendant is a business engaged in trade or commerce within the meaning of the statute.

73. In the course of marketing and selling its kratom products, Defendant represented—expressly and by omission—that its products were safe for ordinary consumer use, while failing to disclose that regular use posed a substantial risk of addiction, physical dependence, and withdrawal symptoms.

74. Defendant's packaging, labeling, and marketing materials omitted material facts concerning the addictive and opioid-like nature of its kratom products, creating the

false and misleading impression that the products were benign, non-addictive, or suitable for regular consumption.

75. Defendant's acts and omissions were consumer-oriented and likely to mislead a reasonable consumer acting reasonably under the circumstances.

76. Plaintiff I.P. was unaware that Defendant's products carried a risk of addiction, physical dependence, or withdrawal symptoms at the time of purchase and use.

77. Had Defendant disclosed the true nature and risks of its kratom products, Plaintiff would not have purchased them, or would not have purchased them in the quantities and frequency he did.

78. Defendant's deceptive acts and practices were a substantial factor in causing Plaintiff's purchases of the products and the resulting economic losses he incurred.

79. As a direct and proximate result of Defendant's violations of New York General Business Law § 349, Plaintiff suffered an ascertainable loss, including money paid for products he would not have purchased absent Defendant's deceptive acts and omissions.

80. Defendant's deceptive conduct was willful, knowing, and ongoing, posing a continuing risk of harm to consumers unless enjoined.

81. Plaintiff seeks all relief available under New York General Business Law § 349(h), including actual damages, statutory damages of $50 per violation, injunctive relief as appropriate, and such other relief as the Court deems proper.

## THIRD CAUSE OF ACTION
## Violation of New York General Business Law § 350

82. Plaintiff I.P. realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

83. Defendant engaged in false advertising in the conduct of business, trade, or commerce, in violation of New York General Business Law § 350.

84. New York General Business Law § 350 prohibits false advertising, including labeling and marketing of consumer products, that is misleading in a material respect,

including by omission of material facts necessary to prevent the advertising from being misleading.

85. Defendant advertised, marketed, labeled, and promoted its kratom products through packaging, online product descriptions, and retail-facing materials in a manner that falsely suggested the products were safe, benign, or suitable for regular consumer use.

86. Defendant's advertising and labeling failed to disclose material facts regarding the addictive nature of its kratom products, their opioid-like effects, and the risk of physical dependence and withdrawal associated with repeated use.

87. These omissions rendered Defendant's advertising misleading in a material respect and created the false impression that Defendant's products were natural, non-addictive, and safer than they actually were.

88. Defendant's false and misleading advertising was consumer-oriented and likely to mislead a reasonable consumer acting reasonably under the circumstances.

89. Plaintiff I.P. viewed and relied upon Defendant's misleading advertising and labeling, which was a substantial factor in his decision to purchase and continue purchasing Defendant's products.

90. Had Defendant truthfully disclosed the addictive and dependence-forming nature of its kratom products, Plaintiff would not have purchased them, or would not have purchased them in the quantities and frequency he did.

91. Defendant's false advertising was a substantial factor in causing Plaintiff's purchases of the products and the resulting economic losses he incurred.

92. As a direct and proximate result of Defendant's violations of New York General Business Law § 350, Plaintiff suffered an ascertainable loss, including money paid for products he would not have purchased absent Defendant's false advertising.

93. Defendant's false advertising is ongoing and poses a continuing risk of harm to consumers unless enjoined.

94. Plaintiff seeks all relief available under New York General Business Law §§ 350 and 350-E, including actual damages, statutory damages of up to $500 per violation pursuant to § 350-E(3), injunctive relief, and such other relief as the Court deems proper.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability**
**(New York U.C.C. § 2-314)**

95. Plaintiff I.P. realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. At all relevant times, Defendant was engaged in the business of designing, manufacturing, marketing, distributing, and selling kratom products to consumers, including Plaintiff.

97. Defendant's kratom products constitute "goods" within the meaning of New York Uniform Commercial Code § 2-105 and were sold to Plaintiff in the ordinary course of Defendant's business.

98. By selling its kratom products to Plaintiff, Defendant impliedly warranted that the products were merchantable, fit for their ordinary purpose, and accompanied by labeling sufficient to make the products reasonably safe for their intended and foreseeable uses, as required by New York Uniform Commercial Code § 2-314.

99. The ordinary purpose of Defendant's kratom products, as marketed and labeled, was for safe, routine consumer use without unreasonable risk of addiction, physical dependence, or withdrawal symptoms.

100. Defendant's kratom products were not merchantable at the time of sale because they posed a substantial risk of addiction, physical dependence, and withdrawal upon regular use, and because Defendant failed to disclose these material risks on the products' packaging or labeling.

101. Defendant's kratom products therefore could not pass without objection in the trade under the contract description and were not fit for the ordinary purposes for which such goods are used.

102. Plaintiff purchased Defendant's products and used them in a manner reasonably foreseeable to Defendant.

103. Plaintiff did not receive the products as warranted and would not have purchased Defendant's products, or would not have purchased them in the quantities and frequency he did, had Defendant disclosed that the products were addictive and capable of causing withdrawal symptoms.

104. Defendant breached the implied warranty of merchantability by selling kratom products that were defective, unfit for ordinary use, and inadequately labeled at the time they left Defendant's control.

105. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff suffered economic injury, including money paid for products that were worth less than represented and that he would not have purchased absent Defendant's breach.

106. Defendant received timely notice of Plaintiff's breach of implied warranty claim pursuant to New York Uniform Commercial Code § 2-607. On or about July 23, 2025, Plaintiff's counsel sent Defendant written notice advising that Defendant's kratom products breached the implied warranty of merchantability due to their undisclosed addictive and withdrawal-causing properties and demanding that Defendant cease its unlawful conduct and provide restitution. Defendant failed to cure the breach or provide any relief.

## **FIFTH CAUSE OF ACTION**
## **Unjust Enrichment**

107. Plaintiff I.P. realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

108. Plaintiff conferred a monetary benefit on Defendant by purchasing Defendant's kratom products.

109. Defendant had knowledge of and appreciated the benefit conferred upon it by Plaintiff through the sale of its products.

110. Defendant accepted and retained the benefit of Plaintiff's payments under circumstances that make retention of that benefit unjust and inequitable, including because Defendant profited from sales obtained through material omissions concerning product safety and addictiveness.

111. Defendant's retention of the benefit is unjust because Defendant sold kratom products without disclosing material facts regarding their addictive nature, risk of physical dependence, and withdrawal symptoms—facts material to a reasonable consumer and which Plaintiff would have relied upon in deciding whether to purchase the products or how much to pay for them.

112. Plaintiff would not have purchased Defendant's products, or would not have paid the amounts he did, had Defendant disclosed the true nature and risks of the products.

113. As a result, Defendant was unjustly enriched at Plaintiff's expense in an amount equal to the money paid for Defendant's products that Plaintiff would not have purchased absent Defendant's omissions.

114. Equity and good conscience require restitution of the amounts Defendant unjustly retained.

115. This claim is pleaded in the alternative to Plaintiff's legal claims, to the extent such legal remedies are unavailable or deemed inadequate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff I.P. respectfully requests that judgment be entered in his favor and against Defendant Hundreds Premium LLC, and that the Court award the following relief:

a. for actual damages in an amount to be proven at trial or on prove-up, including but not limited to, all monies paid by Plaintiff for Defendant's products that he would not have purchased absent Defendant's deceptive omissions; and any additional out-of-pocket economic losses proximately caused by Defendant's unlawful conduct;

b. for statutory damages as authorized by law, including the statutory minimum damages available under New York General Business Law §§ 349 and 350;

c. for treble damages, where permitted by law, based on Defendant's willful, knowing, and intentional misconduct, including its failure to disclose material addiction and withdrawal risks associated with its products;

d. for restitution and, to the extent permitted by law or equity, disgorgement of revenues unjustly obtained by Defendant as a result of its deceptive and unlawful practices;

e. for attorneys' fees and costs, including reasonable attorneys' fees, litigation expenses, and costs of suit, pursuant to California Civil Code § 1780(e); New York General Business Law §§ 349(h) and 350-e(3); and any other applicable authority;

f. for pre-judgment and post-judgment interest as permitted by law;

g. for injunctive relief, to the extent warranted and permitted by law, prohibiting Defendant from continuing to sell or market its products without disclosing material addiction, dependence, and withdrawal risks; and

h. for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff I.P. demands a trial by jury on all claims so triable.

Dated: March 13, 2026

**LYNCH CARPENTER, LLP**

By: */s/Todd D. Carpenter*

Todd D. Carpenter (Cal. Bar No. 234464)
todd@lcllp.com
Scott G. Braden (Cal. Bar No. 305051)
scott@lcllp.com
9171 Towne Centre Drive, Suite 180
San Diego, California 92122
Telephone: (619) 762-1910
Facsimile: (858) 313-1850

*Attorneys for Plaintiff*